UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

   -v.-

EFREN RUIZ,

        Defendant.

S2 11 Cr. 1072 (DLC)

**Government's Sentencing Submission**

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Jason A. Masimore
Russell Capone
Edward B. Diskant
Assistant United States Attorneys
   *Of Counsel*



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 30, 2013

**By ECF**

Honorable Denise Cote
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re: United States v. Efren Ruiz, S2 11 Cr. 1072 (DLC)

Dear Judge Cote:

      We write in connection with the sentencing of defendant Efren Ruiz (the "defendant"), scheduled to take place on September 6, 2013. In particular, we address the defendant's culpability relative to the dozens of other defendants charged in the counts related to the unlawful trafficking of second-hand prescription drugs.

      Pursuant to the plea agreement, the defendant pleaded guilty to Count Two of the Superseding Indictment, and in particular with conspiring to commit the unlawful wholesale distribution of prescription drugs, in violation of Title 18, United States Code, Section 371 and Title 21, United States Code, Section 353. In the plea agreement, the parties stipulated that the defendant's offense level was 21, comprised of a base offense level of six, plus 16 levels because the amount of loss was between $1,000,000 and $2,500,000, plus two levels because the offense involved the reckless risk of serious bodily injury, and minus three levels for acceptance of responsibility. Because the defendant is within criminal history category I, the stipulated Guidelines range was 37 to 46 months' imprisonment. The United States Department of Probation ("Probation Department"), after conducting its independent analysis, agreed with the parties' Guidelines calculation and recommended a sentence of 37 months' imprisonment. (Presentence Investigation Report ("PSR") ¶¶ 135-149, p. 39.)

Ruiz's Involvement in Second-Hand Prescription Drug Trafficking

      Ruiz was a mid-level financer of significant prescription drug transactions. Ruiz, who was initially charged by complaint in July 2013, was recruited into the scheme in or around 2011 by an individual who later became a cooperating witness for the Government (the "CW"). The CW purchased unlawfully diverted prescription drugs from sources in New Jersey and sold those prescription drugs to Alex Oria, a co-defendant in this case who funneled the drugs to corrupt wholesale distribution companies around the country. The CW asked Ruiz to invest in the purchase of prescription drugs, and Ruiz made an investment of approximately $129,000. But Ruiz was not a silent partner. In addition to investing, Ruiz accompanied the CW to multiple

prescription drug transactions in New Jersey, where they retrieved prescription drugs (largely HIV medication), paid for them, and sent them to Texas, where Oria was based. In all, as the parties have stipulated, Ruiz and the CW together purchased between $1-2.5 million worth of prescription drugs (representing the Medicaid value of those drugs, not the amounts paid by Ruiz and the CW). (See Complaint ¶ 16; PSR ¶¶ 109-112.)

Ruiz plainly filled a critical role in the conspiracy by providing money necessary for the CW and he to perpetuate the scheme and participating in purchasing and mailing the drugs in furtherance of the scheme. The amount of money at issue—both the amount invested by Ruiz personally and the value of the drugs he peddled in—is substantial. Moreover, Ruiz undertook these activities knowing that what he was doing was wrong, and in particular that he was purchasing and re-selling prescription drugs of questionable origin without the appropriate licenses.

A sentence within the applicable Guidelines range of 37 to 46 months is appropriate and necessary to reflect the seriousness of the offense and to provide just punishment, as well as to provide the necessary deterrent effect both to this defendant and to others in the business of unlawfully buying and selling prescription drugs. Such a sentence, while by no means excessive, will send a message that this particular crime of dealing in black market prescription drugs is a serious one that will result in considerable jail time. Further, the sentence would be appropriate in light of the other sentences imposed by the Court to date in this case. For example, the Court sentenced Alex Justo, a low-level collector of prescription drugs with a loss amount of between $120,000 and $200,000, to 18 months' imprisonment. The Court sentenced Sergio Novo, a mid-level aggregator of prescription drugs with a loss amount of between $2.5-$7 million, to a below-Guidelines sentence of 30 months, in part based on the defendant's age and health considerations. The Court sentenced Amauris Rosario, a highly active collector of prescription drugs who also sold controlled substances and participated in a robbery, to 78 months' imprisonment. Ruiz's role in the offense was at a higher level than Justo's, is incomparable to Rosario's because no controlled substances or robberies are involved, and is similar in level to Sergio Novo's, though Ruiz was somewhat less active than Novo. Nonetheless, some of the same considerations that merited a below-Guidelines sentence for Novo are not present here.

The defense submission asks for a sentence that does not involve incarceration. In addition to pointing out Ruiz's lack of criminal history, the defense submission suggests that Ruiz does not deserve substantial punishment because (i) all he did was fail to withdraw from the conspiracy when he learned of its illegal nature so that he could get his money back; and (ii) financing the illegal activity is not as bad as carrying it out. Both of these arguments should be rejected.

The defendant's statement that he did not understand that what he was doing was illegal until some point midway through the conspiracy is self-serving and difficult to comprehend. It is unclear why or how the defendant could think that investing in prescription drugs without any licenses is legal, or what exactly changed the defendant's understanding of what was going on. Moreover, if called to testify, the CW would be expected to testify that he explained the scheme to the defendant. Similarly, the defendant's representation that he only broke the law knowingly in order to get his investment back should be met with skepticism. It is also irrelevant, because it does not vitiate the serious detriment to society posed by distributing diverted drugs, or the

defendant's knowing and active participation in the scheme.  Finally, the suggestion that the defendant should not be incarcerated because he did nothing more than finance the operation is both inaccurate and unpersuasive.  It is inaccurate because, as the defendant admits, he did not simply finance the operation from afar, but instead actively traveled to New Jersey to participate in transactions.  It is unpersuasive because providing the money to carry out the heinous scheme charged in the Indictment is surely as bad as, for example, conducting the hand-to-hand transactions in furtherance of that scheme.  For example, Alex Justo, sentenced by the Court to 18 months for low-level sales of prescription drugs, would not have been able to do so without a market having been created at higher levels by people such as Efren Ruiz, who provided a six-figure investment.

Given Ruiz's role in the offense, including as it compares to other defendants, the need for deterrence in this emerging area of criminality, and the defendant's acceptance of responsibility for his actions, the Government respectfully submits that a sentence within the stipulated Guidelines range of 37 to 46 months would be sufficient but not greater than necessary to serve the goals of sentencing as to this defendant.

Respectfully submitted,
PREET BHARARA

By: /s/ Russell Capone
Russell Capone
Assistant U.S. Attorney
(212) 637-2247

cc: Nayib Hassan, Esq. (by ECF)